BRIAN J. FOLEY *v.* SOUTHPORT MANOR CONVALESCENT CENTER, INC., ET AL.
(5062)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 6—decision released July 14, 1987

*Dwight F. Fanton,* with whom were *James P. White* and, on the brief, *Christopher S. Rode,* for the appellants (defendant).

*Louis R. Pepe,* with whom were *James G. Green, Jr.,* and, on the brief, *Jeanine M. Dumont,* for the appellee (plaintiff).

BORDEN, J. The defendant Albert A. Garofalo appealed from the judgment of the trial court holding him in contempt of court and imposing sanctions therefor.[1] The trial court's judgment of contempt followed

---

[1] The three defendants are Southport Manor Convalescent Center, Inc. (Southport); Anne P. Toth, the secretary of Southport; and Albert A. Garofalo, the president of Southport and the owner of the real estate involved in this case. Although all three defendants purported to appeal, the trial court's judgment held only Garofalo in contempt of court. We therefore dismiss the appeal as to Southport and Toth.

an earlier stipulated judgment arising out of a contract pursuant to which the defendants agreed to sell a nursing home to the plaintiff. Garofalo claims that the court erred in holding him in contempt of court for his failure to obey the court's order that he seek a zoning variance or change of zone as to the property. We find error.

The relevant facts are undisputed. On September 30, 1984, the parties entered into a contract whereby the defendants agreed to sell their one hundred forty bed nursing home, located in the town of Fairfield, to the plaintiff for $5,250,000. The plaintiff paid a $5000 deposit, and was obligated by the contract to make an additional deposit of $150,000 on or before October 15, 1984. The contract provided for a closing date of October 30, 1984. Although the nursing home was located on a 10.09 acre tract of land, the contract provided for the sale of only 3.74 acres of that tract. The smaller tract carved out of the larger tract that portion of the land essentially occupied by the buildings and parking area of the nursing home. The contract obligated the seller to convey marketable title, free from encumbrances "except for the following: (1) any and all provisions of any ordinance, municipal regulation and public or private law, building, building line and zoning restrictions of the town in which the Premises are located . . . . "

A dispute arose between the parties concerning the performance of the contract. The plaintiff claimed, inter alia, that the defendants were in breach for failure to give notice of the sale to the state health department. The defendants claimed, inter alia, that the plaintiff was in breach for failure to make the additional deposit of $150,000. The plaintiff sued the defendants seeking, inter alia, specific performance of the contract and injunctive relief restraining the defendants from conveying the property.

On November 9, 1984, the trial court held a hearing on the plaintiff's motion for a temporary injunction to restrain the defendants from selling or encumbering the real estate pending the trial of the plaintiff's action. After a partial hearing, the parties stipulated to a judgment which the court rendered orally as follows: "What I'll do is right now enter by stipulation, I'll enter a reformation of the contract, and the only reformation will be an extension of time for the down payment. And the reformation will further state that the notice to the State of Connecticut Health Department will be simultaneous with the payment of the $150,000 down payment. The time for both of those acts is extended to November 16th, 1984, and the closing will take place on this premises on or before December 30th. I will extend the October 30th date to December 30th. Now, that's all I am going to do. I'm going to reform the contract to that extent. Are you in agreement with it?" The parties indicated their agreement. The court's judgment file provides in part: "The Court, having heard the parties on the stipulation, finds that judgment should be entered in accordance with the stipulation. Whereupon it is adjudged that a reformation of the purchase and sale agreement is ordered with November 16, 1984, set as the date that the plaintiff purchaser is to make an additional deposit of $150,000 simultaneously with the defendant seller delivering to the plaintiff the appropriate letter notifying the Connecticut Health Department of the impending sale and that the new closing date be on or before December 30, 1984." The plaintiff made the additional deposit and the defendant delivered to the plaintiff the appropriate letter addressed to the state health department.

In preparing for the closing, the plaintiff's attorney discovered that a zoning problem existed: because after the sale the nursing home would be located on the 3.74 acre tract rather than the 10.09 acre tract, the town

of Fairfield would consider the nursing home to be in violation of certain zoning regulations. The plaintiff offered several solutions to the zoning problem, including a long term ground lease of the 3.74 acre tract, rather than a conveyance in fee. The defendants rejected the plaintiff's suggestions. The defendants maintained that they could not close the transaction because they could not deliver marketable title, and they offered to refund the plaintiff's deposit.

Thereafter, the plaintiff moved to hold the defendants in contempt of court for their alleged failure to comply with the judgment. On September 23, 1985, after a hearing in which no testimony was offered but in which the attorneys for the parties made representations to the court, the court entered the following orders: "I'm ordering [the defendants] to do everything possible to effect the sale, whatever zoning is required. . . . I think Mr. Garofalo and Mrs. Toth have an obligation to cooperate to the maximum in order to enforce the contract. . . . I'm not going to hold anyone in contempt, but I'm going to order that they make an application for a variance and take whatever steps are necessary to comply with the intent of the contract." After further colloquy among the court and the attorneys, the defendants' attorney stated: "We'll agree to apply for the variance on a hardship basis for the 3.74 acres that we agreed to sell. Now, anything beyond that, we cannot agree to, Your Honor." The court then continued the case to December 16, 1985.

The defendants did not thereafter apply for a zoning variance or for a change of zone. They justified their failure to take these actions on the basis that, as a result of discussions with local town officials, it became apparent to them that such applications would either be denied, would be vulnerable to challenge on appeal, or would involve great expense and delay and would not be feasible.

Ultimately, on March 21 and 31, 1986, an evidentiary hearing was held on the plaintiff's motion for contempt. The court adjudged Garofalo in contempt of court because of his bad faith[2] failure to apply for the variance or zone change which the court, on September 23, 1985, had ordered him to seek.[3] It is clear from this record that the court viewed the stipulated judgment of November 9, 1984, as a judgment of specific performance of the contract between the parties, and was acting to protect the integrity of that judgment. The court imposed sanctions of $1774.31 per day, to be held in abeyance for sixty days during which period Garofalo could purge himself by either (1) entering into a long term ground lease of the 3.74 acres to the plaintiff, or (2) reforming the contract further by agreeing to sell the entire 10.09 acres to the plaintiff based on a price to be set by three independent appraisers. This appeal followed.

Garofalo raises several arguments on appeal, two of which we find equally and independently dispositive. We therefore need not consider his other claims.

Garofalo argues that the stipulated judgment of November 9, 1984, was not a judgment of specific performance of the contract and that, therefore, the court erred in holding him in contempt of court for failure to obey its order, which was issued incident to that judgment and which was aimed at specific performance of the contract. We agree.

---

[2] In this connection, the court found that "the true problem" was that "Garofalo made a bad deal. It was a bad business judgment." Thus, the court implicitly found that Garofalo did not exercise good faith. Because of our disposition of this appeal, we need not decide whether the evidence supports these findings.

[3] The court specifically declined, however, to find that it was probable that any such applications would have been successful. See *Budney* v. *Ives,* 156 Conn. 83, 239 A.2d 482 (1968).

Although on appeal from a judgment of civil contempt, our scope of review is technically limited to jurisdictional questions such as whether the court had authority to impose the penalty inflicted and whether the conduct penalized could constitute a contempt, that scope of review is sufficiently broad to encompass many claims of error which are not facially jurisdictional. *Barbato* v. *J. & M. Corporation*, 194 Conn. 245, 250–51, 478 A.2d 1020 (1984). We conclude that our scope of review encompasses Garofalo's claims of error on this appeal.

The judgment of November 9, 1984, both as rendered orally by the court and as reflected in the judgment file, was a judgment reforming the contract only. It was not a judgment ordering specific performance of the contract. The court's language was quite clear. "What I'll do is right now enter by stipulation, I'll enter a reformation of the contract, and the only reformation will be an extension of time for the down payment. And the reformation will further state that the notice to the State of Connecticut Health Department will be simultaneous with the payment of $150,000. . . . Now, that's all I'm going to do. I'm going to reform the contract to that extent." After some further colloquy in which the plaintiff expressed some dissatisfaction with the fact that the down payment would not be held in escrow by his attorney, the court stated further: "It was a mutual misunderstanding. I'll state that. You [the plaintiff] misunderstood and they [the defendants] misunderstood. And I'm trying to reform the contract so everybody will comply." The judgment file, consistent with the court's oral judgment, provides: "Whereupon it is adjudged that a reformation of the purchase and sale agreement is ordered . . . . "

Although a stipulated judgment is in the nature of a contract, it is as conclusive as if it had been rendered as an adjudication on the merits of contested facts. *Lee*

v. *Tufveson,* 6 Conn. App. 301, 303, 505 A.2d 18, cert. denied, 199 Conn. 806, 508 A.2d 31 (1986). Although the court has the power to issue orders necessary to protect the integrity of a stipulated judgment, it may not enlarge the scope of that judgment. Id; see also *Owsiejko* v. *American Hardware Corporation,* 137 Conn. 185, 187–88, 75 A.2d 404 (1950).

In this case, the court enlarged a stipulated judgment of reformation of the contract into a judgment of reformation *and* specific performance. The stipulated judgment of reformation left the parties to their own private behavior in carrying out the contract; it did not add the power of the court to that process. Further judicial proceedings were required in order to secure a judgment of specific performance. Neither the plaintiff nor the court could shortcut that process by the contempt proceedings in this case.[4]

By ordering Garofalo to apply for a zoning variance or zone change, and then by holding him in contempt for his failure to do so, the court went beyond issuing orders to protect the integrity of its judgment of reformation. It in effect issued orders to protect the integrity of a judgment of specific performance which had not been rendered.

The plaintiff argues that the record establishes that the stipulated judgment of November 9, 1984, was a judgment of both reformation *and* specific performance. It is true that, despite the clear limitation of the language of the judgment, as noted above, the parties

---

[4] We note that when a stipulated judgment requires that the parties take direct action, as for example when specific performance is agreed upon, it may be enforced by a contempt proceeding. We do not, however, by this decision foreclose the plaintiff from now attempting further proceedings in this case in order to secure a supplemental judgment of specific performance of the reformed contract. Nor do we foreclose the defendants from raising any defense or claim in opposition to such an attempt. We need not decide that issue at this time.

and the court considered it to be such a dual judgment. Indeed, the record in the trial court and in this court is replete with statements and acknowledgments by the defendants indicating that they understood the judgment as such. This brings us to the second argument of Garofalo which is equally dispositive of this appeal.

Even if we assume, without deciding, that the stipulated judgment ordered specific performance of the contract, the court's subsequent order that Garofalo apply for a variance or zone change was invalid. Thus, Garofalo could not properly be held in contempt for failure to obey that order.

"It is hornbook law that courts do not rewrite contracts for the parties." *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 227, 423 A.2d 887 (1979). The contract between these parties contained no provision, either explicit or implicit, requiring Garofalo to apply for any zoning approval as to the 3.74 acres. Indeed, zoning restrictions were specifically excepted from Garofalo's contractual obligation to deliver marketable title free from encumbrances. The trial court did not conclude, nor on this record can we, that the risk of zoning violations should fall on Garofalo because he knew or should have known of the zoning infirmity inherent in the proposed sale. The only evidence on that issue was to the effect that the zoning restriction being enforced by the town had not been made apparent when Garofalo built the nursing home in 1970. The trial court's order that Garofalo apply for relief from zoning restrictions enlarged his obligations beyond those authorized by the concept of specific performance of the contract. Thus, the court's order in effect rewrote the contract in favor of the plaintiff and to the detriment of the defendants.[5]

[5] In this connection, we do not attach particular significance, to the fact that, after the court issued its order, the defendants' attorney indicated their "agreement" to apply for a variance. At that point, the court had already issued the order. Under these circumstances, the defendants' "agreement" to comply with the order which the court had already made hardly adds anything to the plaintiff's claim for contempt.

Nor is this a case in which Garofalo failed to alert the trial court to his position with respect to the scope of the court's authority until sanctions were imposed. He consistently took the position that his obligations were defined by the contract and that the court had no power to order him to go beyond its terms.

We are not persuaded by the plaintiff's reliance on the principle that a vendee entitled to specific performance " 'may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full.' " *Botticello* v. *Stefanovicz,* 177 Conn. 22, 33, 411 A.2d 16 (1979), quoting *Schneidau* v. *Manley,* 131 Conn. 285, 289, 39 A.2d 885 (1944). Specifically, the plaintiff claims that his willingness to accept a long term ground lease, as opposed to a conveyance in fee, of the 3.74 acres, a solution which the trial court endorsed, comes within that principle. Although we do not quarrel with that principle, we conclude that it does not apply to this case.

The court did not order Garofalo to enter into such a ground lease and did not hold him in contempt for his failure to do so. The court ordered him to apply for zoning relief, and held him in contempt of court for his failure to do so. It is that order and that judgment of contempt which is before us on this appeal. The court then ordered that Garofalo could purge himself of contempt by either entering into such a ground lease or by selling the entire 10.09 acres to the plaintiff. Thus, we have no need to decide whether an order requiring him to enter into such a ground lease would have been proper.

As to the defendants Southport Manor Convalescent Center, Inc., and Anne P. Toth, the appeal is dismissed. As to the defendant Albert A. Garofalo, there is error,

540

the judgment of contempt of court is set aside and the case is remanded with direction to deny the plaintiff's motion to hold the defendant in contempt of court.

In this opinion the other judges concurred.