BRIAN J. FOLEY *v.* SOUTHPORT MANOR CONVALESCENT
CENTER, INC., ET AL.
(6875)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

240

Argued March 7—decision released August 1, 1989

*Louis R. Pepe,* with whom was *Jeanine M. Dumont* and, on the brief, *James G. Green,* for the appellant (plaintiff).

*Dion W. Moore,* with whom was *James T. Shearin* and, on the brief, *Dwight F. Fanton,* for the appellees (defendants).

DUPONT, C. J. This case involves the following undisputed facts. On September 30, 1984, the parties entered into a contract whereby the defendants agreed to sell their 140 bed nursing home, including land, located in the town of Fairfield, to the plaintiff for $5,250,000. The plaintiff paid a $5000 deposit, and was obligated under the contract to make an additional deposit of $150,000 on or before October 15, 1984. The contract provided for the sale of only 3.74 acres, a portion of the property on which the nursing home was

situated. The real property was owned by the defendant Albert A. Garofalo. The contract obligated the defendants to convey marketable title, free from encumbrances, excepting any town zoning restrictions.

A dispute arose between the parties concerning the performance of the contract. The plaintiff claimed that the defendants were in breach for failure to give notice of the sale to the state health department. The defendants claimed that the plaintiff was in breach for failure to pay the additional deposit of $150,000. The plaintiff sued the defendants seeking, inter alia, specific performance of the contract and injunctive relief restraining the defendants from conveying the property.

The parties ultimately stipulated to a judgment that the court, *Kline, J.*, rendered orally as follows: "What I'll do is right now enter by stipulation, I'll enter a reformation of the contract, and the only reformation will be an extension of time for the down payment. And the reformation will further state that the notice to the State of Connecticut Health Department will be simultaneous with the payment of the $150,000 down payment. The time for both of those acts is extended to November 16th, 1984, and the closing will take place on this premises on or before December 30th. I will extend the October 30th date to December 30th. Now, that's all I am going to do. I'm going to reform the contract to that extent."

On November 9, 1984, the trial court rendered judgment in accordance with the stipulation: "The Court, having heard the parties on the stipulation, finds that judgment should be entered in accordance with the stipulation. Whereupon it is adjudged that a reformation of the purchase and sale agreement is ordered with November 16, 1984, set as the date that the plaintiff purchaser is to make an additional deposit of $150,000 simultaneously with the defendant seller delivering to

the plaintiff the appropriate letter notifying the Connecticut Health Department of the impending sale and that the new closing date be on or before December 30, 1984." The plaintiff made the additional deposit and the defendants delivered to the plaintiff the appropriate letter addressed to the state health department.

It thereafter became known that the sale of only 3.74 acres with the nursing home would violate certain zoning regulations. The defendants maintained that they could not deliver marketable title, and offered to refund the plaintiff's deposit. Finding that option to be unsatisfactory, the plaintiff moved to hold the defendants in contempt of court for their alleged failure to comply with the judgment.

After a hearing held on September 23, 1985, the court rendered the following orders: "I am ordering [the defendants] to do everything possible to effect the sale, whatever zoning is required. . . . I am not going to hold anyone in contempt, but I am going to order that they make an application for a variance and take whatever steps are necessary to comply with the intent of the contract."

The defendants did not thereafter apply for a zoning variance or for a change of zone. After an evidentiary hearing on the plaintiff's motion for contempt on March 31, 1986, the court adjudged Garofalo in contempt of court because of his bad faith failure to apply for the variance or zone change that the court, on September 23, 1985, had ordered him to seek. The court, as did the parties, viewed the stipulated judgment of November 9, 1984, as a judgment of specific performance of the contract between the parties, and was acting to protect the integrity of that judgment. The court imposed sanctions of $1774.31 per day until the defendant purged himself of contempt by either (1) entering into a long term ground lease of the 3.74 acres to the

plaintiff, or (2) reforming the contract further by agreeing to sell the entire 10.09 acres to the plaintiff based on its fair market value.

On April 17, 1986, the defendants appealed to this court. In *Foley* v. *Southport Manor Convalescent Center, Inc.,* 11 Conn. App. 530, 528 A.2d 841, cert. denied, 205 Conn. 805, 531 A.2d 935 (1987) (*Foley I*), this court set aside the judgment of contempt and remanded the case with direction to deny the plaintiff's motion to hold the defendant in contempt of court. The case was not remanded for any other purpose, and the rescript of the case did not order any other further proceedings.

In alternative holdings, this court held (1) that the trial court erred in holding the defendant in contempt for failing to apply for the variance because the order requiring the application for a variance exceeded the stipulated judgment, which had reformed the contract, but had not ordered specific performance; id., 536–38; and (2) that, even if the stipulated judgment had in fact ordered specific performance, the requirement that the defendant apply for relief from zoning restrictions enlarged his obligations beyond those authorized by the scope of specific performance. Id., 538. In a footnote to the opinion, this court stated: "We do not, however, by this decision foreclose the plaintiff from now attempting further proceedings in this case in order to secure a supplemental judgment of specific performance of the reformed contract. Nor do we foreclose the defendants from raising any defense or claim in opposition to such an attempt. We need not decide that issue at this time." Id., 537 n.4.

On October 13, 1987, the plaintiff made a motion for supplemental judgment of specific performance of the reformed contract. In support of its motion, the plaintiff made specific reference to footnote four in *Foley I*. That motion requested the court (1) to transfer the

lesser estate of a long term ground lease of the 3.74 acres parcel, or (2) to convey title to the nursing home on the entire 10.09 acre parcel, on the condition that the plaintiff pay the fair market value of the acreage in excess of the 3.74 acres. The trial court denied the motion and, upon a motion for articulation by the plaintiff, stated that it denied the motion because the plaintiff failed to comply with Practice Book § 326.[1]

The sole issue in this appeal is whether the trial court erred in denying the plaintiff's motion for supplemental judgment of specific performance of the reformed contract.[2] The plaintiff claims that, although our rules of practice do not provide for a motion for supplemental judgment of specific performance, the procedure was initiated by the plaintiff in reliance upon footnote four of *Foley I.*

It appears that the plaintiff is confused about this court's intention in footnote four by the use of the phrase "supplemental judgment." Apparently, the plaintiff believed that the phrase represented a term of art contemplating a new procedure by which the plaintiff could enforce the reformed contract. The plaintiff's interpretation of the footnote is incorrect. The proper action for the plaintiff to have pursued after

---

[1] Practice Book § 326 provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court.

"Upon the filing of a motion to open or set aside a civil judgment, except a judgment in a small claims or juvenile matter, the moving party shall pay to the clerk the filing fee prescribed by statute unless such fee has been waived by the court."

[2] As previously noted, *Foley* v. *Southport Manor Convalescent Center, Inc.,* 11 Conn. App. 530, 528 A.2d 841 (1987), held that the stipulated judgment was not one for specific performance but for reformation.

*Foley I* was to initiate a new suit claiming a breach of the reformed contract, and to request, inter alia, the relief of specific performance.

The trial court mistakenly relied upon Practice Book § 326 to deny the plaintiff's motion. The plaintiff did not seek to open a judgment, but sought another, or second, judgment of specific performance. When a trial court reaches a decision on mistaken grounds, the trial court's action will be sustained if proper grounds exist to support it. *Norwich* v. *Norwalk Wilbert Vault Co.,* 11 Conn. App. 332, 334, 527 A.2d 716 (1987), aff'd, 208 Conn. 1, 544 A.2d 152 (1988).

There is no error.

In this opinion the other judges concurred.