[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
At the trial of this case several of the legal issues were reserved for decision by the court as to the remaining defendants, Southport Manor Convalescent Center, Inc. and Albert Garofalo, hereafter referred to as the defendants. Undecided issues covered by this decision include: (1) whether interest should be allowed on the judgment against the defendants for breach of contract; (2) whether the plaintiff is entitled to recover under the Connecticut Unfair Trade Practices Act, 42-110b C.G.S.; (3) whether the plaintiff is entitled to specific performance in addition to damages for breach of contract; (4) a related question of election of remedies; and (5) a declaratory judgment under the first count of the defendants counterclaim. The defendants have also filed a motion to set aside the verdict which will be decided by a separate opinion. The issues stated above will be decided in the context of the verdict by the jury for the plaintiff in the amount of $943,001 for breach of contract and negligent misrepresentation.
1. Claim under the Connecticut Unfair Trade Practices Act
The fifth count of the amended complaint claims damages against the defendants for unfair or deceptive acts or practices in the conduct of their trade or business under the Connecticut Unfair Trade Practices Act (CUTPA). This claim was not submitted to the jury and was tried to the court over the objection of the plaintiff. In some cases CUTPA claims have been decided by a jury in conjunction with the trial of other jury issues without objection or a ruling by the court on whether CUTPA claims should CT Page 2873 be tried to the court or to the jury. In other cases Superior Court judges have held that CUTPA claims brought as counterclaims in foreclosure actions were collateral to the main, equitable issues in the case, and should not be tried to the jury. There is also a split of authority whether CUTPA claims in another context can be heard by a jury. This issue is apparently on appeal to the Supreme Court in a case that was argued September 23, 1993 but which has not been decided.
In the absence of controlling precedent this court is of the opinion that a CUTPA claim is not properly triable to a jury as it is a statutory cause of action based upon a federal statute which does not codify a common law cause of action, and because the relief granted by the trier is essentially equitable. A party is entitled to a jury trial under Article First 19 of the Connecticut Constitution in all cases for which there was a right to a trial by jury when the state constitution was adopted in 1818, or in cases that are substantially similar to ones for which the right to a jury trial existed at common law in 1818. Commissioner of Environmental Protection v. Connecticut Building Wrecking Co.,227 Conn. 175, 182; Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 50. The fact that a cause of action exists under a statute is not controlling, particularly where the legislature codifies a common law cause of action. Id. 50, 51; Skinner v. Angliker, 211 Conn. 370, 374, 375. However, a jury trial is not required if the cause of action does not have its roots in the common law or where the remedy involved is equitable rather than legal. Id. 375, 376; Commissioner of Environmental Protection v. Connecticut Building Wrecking Co., supra, 182. In the latter case an environmental enforcement action for injunctive relief and civil penalties was primarily equitable and not substantially similar to legal actions at common law before 1818, so there was no right to a jury trial. Id., 182-187.
A civil action under 42-110b was created by statute in 1973. While fraud and some similar common law causes of action may also form the basis for a CUTPA claim, an action for damages under42-110g, which requires a method act or practice by a defendant which is prohibited by 42-110b, is more expansive and governs conduct not actionable at common law. For example, the act proscribes a broader range of conduct than did the common law action for innocent misrepresentation. Hinchliffe v. American Motors Corporation, 184 Conn. 607, 617. "The increased flexibility of the action stems from the absence of certain obstacles to recovery under the common law action." Id. On the other hand CUTPA is not CT Page 2874 geared to supplement to every common law cause of action tort or contract. The conduct of the defendant must be in trade or commerce, Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660,670; 42-110b(a) C.G.S. In addition, the plaintiff must be a consumer, business person or competitor who sustains substantial injury from the unfair practice. A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 216; McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 570. Finally, in deciding whether conduct is governed by CUTPA, Connecticut courts are guided by interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45 (a)(1). Id., 567; Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747,755, 756; 42-110b(b) and (c) C.G.S. While not identical, the Connecticut statute tracks the federal statute, which is itself a statutory cause of action created after 1818, and the court considers interpretations of the federal statute by the Federal Trade Commission. Accordingly, even though some conduct regulated under CUTPA might also be a common law tort or contract violation, that is not sufficient to create another cause of action triable by jury. Finally, it should be noted that the legislature itself has not, as with other statutes, stated that CUTPA claims can be tried to a jury.
Another consideration here is that the relief in addition to actual damages provided for a CUTPA violation is primarily equitable, and is awarded by the court. Section 42-110g(a) allows a plaintiff injured by an unfair trade practice "to recover actual damages." However subsection (d) of 42-110g dates that "in any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . . In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief." The statute specifically provides that this component of damages is determined by the court, not the jury. The fact that monetary damages may be awarded as to some component of a statutory claim does not mean that the plaintiff is entitled to a jury trial where most issues in the case are either equitable or are otherwise required to be determined by the court. Commissioner of Environmental Protection v. Connecticut Wrecking Co., supra, 184-187. Even the initial question to be determined by the trier, namely whether a practice is unfair, is more an equitable than a legal concept.
In this case the question of whether the court or jury should CT Page 2875 have decided the CUTPA claim has become academic, since the facts here, even if construed most favorably to the plaintiff do not support a recovery under the statute. Accordingly the court would have been required to direct a verdict in favor of the defendants even if the jury tried the CUTPA issues. The claimed unfair and deceptive acts or practices are based on the claimed fraudulent misrepresentation and legal fraud of the defendants in the fraudulent and negligent misrepresentation counts of the complaint. See Fifth Count, paragraph 22. At trial, the plaintiff proceeded on two claims of misrepresentation by the defendants: (1) that Southport Manor could convey good and marketable title to the plaintiff, and (2) that the plaintiff would receive enough land to operate a nursing home.
The plaintiff's claim that the defendants could not convey marketable title was based solely on the fact that the Fairfield Zoning Regulations contain a maximum building coverage requirement of 10 percent of a parcel, and conveyance of the land covered by the contract, 3.74 acres, created lot coverage above that amount. That claim fails as a matter of law since a violation of zoning regulations is not considered a title defect. Frimberger v. Anzellotti, 25 Conn. App. 401, 409. As a result, the only actionable statement that could be the basis for a misrepresentation claim was Garofalo's statement before the written contract was signed, that the plaintiff would receive enough land to operate a nursing home. The jury found as shown by the interrogatories, that the defendants made a negligent misrepresentation but not a fraudulent misrepresentation. The evidence was that neither the plaintiff nor the defendants were aware of the zoning problem until December 1984, two or three months after the contract was signed. While Foley otherwise had the duty of checking the land records for himself, as a prudent buyer of real property is required to do, and was required by the contract, the jury was arguably convinced that the innocent misrepresentation of Garofalo induced Foley in not to do so. See answer to interrogatory #2. Depending upon the underlying facts, a plaintiff who can prove negligent misrepresentation may also be entitled to recover for the same conduct under CUTPA. Hinchliffe v. American Motors Corporation, 184 Conn. 607, 617; Prishwalko v. Bob Thomas Ford, Inc., 33 Conn. App. 575, 588. However, there cannot be a CUTPA violation when the underlying claim is based solely on negligence. A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 217; Atlantic Richfield Co. v. Canaan Oil Co.,202 Conn. 234, 242. In addition, a breach of contract, even if intentional, does not violate CUTPA unless the claimant shows CT Page 2876 substantial aggravating circumstances surrounding the breach. Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc., 41 Conn. App. 575, 580; Bartolomeo v. S. B. Thomas, Inc.,889 F.2d 530, 535 (4th Cir. 1989). However, a recovery is only allowed under 42-110g(a) of the General Statutes where the plaintiff suffers an ascertainable loss of money or property as a result of an unfair method, act or practice under 42-110b.
The test for an unfair trade practice is now well defined, and three factors are considered: (1) whether the practice without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen. A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 215; McLaughlin Ford, Inc. v. Ford Motor Co., supra, 567-68; Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105, 106. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Cheshire Mortgage Service, Inc. v. Montes, supra, 106. However, a plaintiff must show either an actual deceptive practice or a practice amounting to a violation of public policy. Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355. These three factors, collectively known as the "cigarette rule" require consideration whether the unfair practice alleged amounts to a breach of established concepts of fairness. Id.; Cheshire Mortgage Service, Inc. v. Montes, supra, 107. That situation does not exist here, as Garofalo made an innocent misrepresentation without any intent to deceive Foley, since he did not know the parcel proposed to be conveyed was too small to meet the ten percent coverage requirement in the zoning regulations. The second factor is whether making the misrepresentation was immoral, unethical, oppressive, or unscrupulous. Since the evidence does not show any intent to deceive the plaintiff, and there is no evidence of any unethical or unscrupulous conduct at the time the representation was made, the second factor has not been proven either. Id., 112.
In order to meet the third factor, the "substantial injury" prong of the cigarette rule, the injury must satisfy three tests: it must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers CT Page 2877 themselves could not reasonably have avoided. A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 216; McLaughlin Ford, Inc. v. Ford Motor Co., supra, 569, 570. This test is equally applicable where a business person or competitor claims substantial injury. Id., 570; A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 216.
The facts of this case do not meet these tests. Plaintiff would have a stronger case if in reliance upon the representation, he accepted a conveyance of the subject property and then later discovered that he could not use the nursing home because of the zoning problem. Here there was no substantial loss as a result of the misrepresentation. At most the plaintiff proved loss of a $5,000 application fee, which he already recovered under the negligent misrepresentation count, and could have recovered instead under the breach of contract count, but this fee was non-refundable whether the plaintiff closed title or not. No other damages were proven based on the misrepresentation. In addition this was an injury which the plaintiff, whether considered a business person or competitor, could have avoided. The evidence showed that the seller assumed no responsibility for checking zoning, the plaintiff indicated that he would do so, but never did prior to signing the contract. The Supreme Court has recognized that CUTPA is not so far reaching as to provide redress to another person for any ascertainable harm caused by any person in the conduct of any trade or commerce. Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 725,726. Since the plaintiff would have incurred the $5,000 fee anyway, it is also questionable whether he can satisfy the ascertainable loss requirement of the statute, since no actual damages clearly resulted from any negligent misrepresentation by Garofalo. See Conaway v. Prestia, 191 Conn. 484, 494. Moreover, the representation preceded the signing of the contract, where the plaintiff as potential buyer agreed to purchase the property according to the terms of the written contract. This is enough to preclude a recovery under CUTPA. Siudyla v. Chem Exec. Relocation Systems, Inc., 23 Conn. App. 180, 187 (denying CUTPA in real estate transaction where buyers purchased property "as is" and there was no proof of fraudulent misrepresentation). It is unnecessary to consider the defendants remaining claim that a one time sale of a nursing home by the defendants, who were not in the business of selling nursing homes, did not amount to conduct in trade or commerce by businessmen or competitors sufficient to support a CUTPA violation.
2. Claim of prejudgment interest CT Page 2878
There is no right to recover interest in a civil action unless the defendant agreed to pay interest or a statute provides for it. Section 37-3a of the General Statutes allows a plaintiff to recover damages for the detention of money after it becomes payable. The allowance of interest as an element of damages is primarily an equitable determination and a matter within the court's discretion. Bertozzi v. McCarthy, 164 Conn. 463, 467; Milgrim v. DeLuca,195 Conn. 191, 201; Nor'Easter Group, Inc. v. Colossale Concrete, Inc.,207 Conn. 468, 482 Since an equitable matter is involved, the issue is determined by the court, and the plaintiff is not entitled to a decision by the jury. Franchi v. Farmholme, Inc., 191 Conn. 201,210; Skinner v. Angliker, supra, 374.
The determination of whether or not prejudgment interest is allowed as an element of damages is made on an equitable basis rather than by the application of any arbitrary rule. Bertozzi v. McCarthy, supra, 466. The real question in each case is whether the detention of the money is or is not wrongful under the circumstances. Id., 66; O'Hara v. State, 218 Conn. 628, 643; Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 702. While interest has been allowed in breach of contract cases, H. B. Toms Tree Surgery, Inc. v. Brant, 187 Conn. 343, 348, Bertozzi v. McCarthy, supra, 467, other cases have disallowed interest as an element of damages even though the plaintiff proved breach of contract. O'Hara v. State, supra, 643; Milgrim v. DeLuca, supra, 201. Basically, the question is whether the interest of justice required the allowance of interest as damages for the loss of use of money. Bertozzi v. McCarthy, supra, 466. A material consideration is whether or not the sum involved was liquidated, Alderman v. RPM of New Haven, Inc., 20 Conn. App. 566, 570, although that factor is not necessarily controlling. Slattery v. Maykut, 176 Conn. 147, 155; Bertozzi v. McCarthy, supra. The court can consider whether or not there was a bona fide dispute between the parties, or whether the defendant clearly owed the amount when the action was started, in deciding whether the detention of the money was wrongful under the circumstances.
In this case the defendants contested in good faith whether there was a breach of contract by them. They claim that they were ready, willing and able to convey to the plaintiff the 3.74 acre parcel of land described in the written contract between the parties, and that the closing would have occurred except that the plaintiff refused to accept a conveyance because of the zoning problem that was discovered prior to the closing. Even though damages for breach of contract are determined as of the date of the CT Page 2879 occurrence of the breach of contract, the court is not required to grant prejudgment interest from that date until the date of judgment. O'Hara v. State, supra, 642, 643. Another factor in this case is that the amount of damages was not determined until the jury determined at trial that there was a breach of contract and decided the amount of the damages. The plaintiff contended that the highest and best use of the property at the time of breach in December of 1984 was $7,000,000, while the defendants contended that if there was a breach, the fair market value of the property was $5,250,000, the purchase price, so that there was no ascertainable loss to the plaintiff. The jury evidently picked another number between these figures, which it could do within its discretion, but the amount of the judgment was not determined until that time.
The defendants' refusal to pay monetary damages to the plaintiff was justified even though the jury finally ruled against them. Since there was no wrongful detention of funds, the plaintiff is not entitled to interest under 37-3a of the General Statutes.
3. Specific Performance
The sixth count of the amended complaint is for breach of contract. In its answer to interrogatory #6 the jury concluded that the plaintiff and the defendants intended the written contract to cover their rights and obligations as to the purchase and sale of Southport Manor, superseding all prior agreements. In interrogatory #7 the jury concluded that Foley agreed to buy and the defendants agreed to sell the property described in the written contract. The jury also concluded that the defendants breached the contract (Interrogatory 11), and awarded the plaintiff $938,000 damages.
The evidence at trial showed that both parties were unaware of the ten percent maximum coverage requirement in the Fairfield Zoning Regulations when they entered into the contract. A provision in of the contract prepared by the plaintiff containing a representation that the property, the structures on it, and the conduct of a business of a nursing home are in compliance with the zoning regulations, was deleted before the contract was signed. Section 1.1 provided that the premises were to be conveyed by warranty deed giving good record and marketable title free from all encumbrances except for those specifically listed; the excepted encumbrances included zoning restrictions of the town in which the CT Page 2880 property was located.
By stipulated judgment the closing date was extended from October 30, 1984 to December 30, 1984. Shortly before the extended closing date, an attorney for the buyer discovered that conveyance of a separate parcel of 3.74 acres would create a violation of the Fairfield Zoning Regulations as to the ten percent maximum coverage provision for buildings. The total area occupied by buildings and structures was approximately one acre so that the coverage on a 3.74 acre parcel would be 25 to 30 percent. The plaintiff was not willing to take the property described in the contract with the zoning restriction on coverage. (Interrogatory #9). Foley made several subsequent proposals to modify the contract and suggested alternative ways that the defendants could perform. The defendants rejected all of these proposals, insisting that the rights and obligations of the parties were governed by the written contract they signed, and that the defendants had no obligation to modify the contract to satisfy the plaintiff. In Foley v. Southport Manor Convalescent Center, Inc., 11 Conn. App. 530, 538, the Appellate Court noted that courts do not rewrite contracts for the parties, and that Garofalo had no obligation to apply for relief from the zoning restrictions on the property. It implicitly rejected the claim that Garofalo had to request the variance of the coverage requirement, obtain a suitable zoning change or a change in zoning regulations. The opinion did not determine whether the plaintiff was entitled to a long term ground lease, as opposed to a conveyance in fee, of the 3.74 acre parcel as an alternate means of performing the contract.
In paragraph 14 of the sixth count plaintiffs allege that the defendants' refusal to perform the contract has caused and continues to cause the plaintiff irreparable damages for which he has no adequate remedy at law. In the prayer for relief the plaintiff requests among other things, monetary damages and an order directing the defendants to specifically perform the agreement as modified on November 9, 1984. The defendants have claimed prior to and during the trial that the plaintiff cannot obtain both the monetary damages for breach of contract and specific performance of the contract itself, and that the plaintiff was required to make an election of remedies. The defendants also claim that the evidence does not support the jury finding of breach of contract, and filed a motion to set aside the verdict. Obviously if there is no breach of contract, the plaintiff is not entitled to recover either damages or specific performance, and deciding on the proper remedy proceeds on the assumption that the CT Page 2881 jury could properly find breach of contract.
A buyer of land is entitled to damages for breach of a contract to convey it, but in the alternative may elect to have the contract specifically performed to the extent of the seller's ability to comply, with an abatement in the purchase price if appropriate, subject to the qualification that specific performance is a form of equitable relief which rests in the sound discretion of the court. Lanna v. Greene, 175 Conn. 453, 458. See also Schneidau v. Manley, 131 Conn. 285, 289. The parties may also contract to limit their remedies for breach. Lanna v. Greene, supra, 458. At trial the court ruled that 7.7 of the Contract, entitled Damages for Seller's Default, gives the buyer the right at his option to waive one or more conditions of the seller's obligations in the contract and require transfer of the property. Under the same section the buyer has the right prior to the closing to terminate the contract and to receive back the money paid by the buyer to the seller prior to the closing. In this case Foley did not want to cancel the sale and receive his $155,000 back, nor did he waive the zoning defect and demand conveyance of the 3.74 acres described in Schedule A of the Contract. Under these circumstances here, 7.7 does not control the buyers remedies for breach of contract. However, that does not allow the buyer to elect both damages and specific performance of the contract.
"The doctrine of election of remedies is equitable in nature, and is purpose is not to prevent recourse to any remedy, but to prevent double recovery for a single wrong." DeLucia v. Burns,11 Conn. App. 439, 447. A party does not necessarily have to elect alternative remedies prior to trial where he cannot in good faith determine the ultimate facts in advance of the trial, but once the trial occurs he is not entitled to recover on two inconsistent remedies. DeVita v. Esposito, 13 Conn. App. 101, 106, 107. In this case after the jury found breach of contract, the plaintiff insisted that the jury decide the question of damages, which it did, finding the plaintiff's damages for breach of contract to be $938,000. It is clear that a recovery by a seller of damages representing the loss of the benefit of the bargain of the contract, is an inconsistent remedy with specific performance of the same contract. By proceeding so far as to have the jury set breach of contract damages, the plaintiff has waived his right to specific performance of the contract. In addition, there are several other reasons why the court finds that the plaintiff is not entitled to the equitable remedy of specific performance. CT Page 2882
An action for specific performance of a contract to sell real estate is an equitable claim which is determined by equitable principles. Frumento v. Mezzanotte, 192 Conn. 606, 615; Cutter Development Corporation v. Peluso, 212 Conn. 107, 114. The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity. Id.; Frumento v. Mezzanotte, supra, 615. Among the considerations is whether the contract is fair, reasonable, on good consideration, free from fraud, surprise or mistake and made according to the requirements of the law. Robert Lawrence Associates, Inc. v. DelVecchio,178 Conn. 1, 18, 19. The plaintiff has the burden of proving all of the essential elements of his cause of action and the burden is primarily on him to show his right in equity and conscience to the relief sought. Cutter Development Corporation v. Peluso, supra, 114, 115. "As a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution of the contract even though the property contracted to be sold becomes considerably more valuable at the time performance is due." Robert Lawrence Associates, Inc. v. DelVecchio, supra, 19.
When the parties commenced negotiations on the contract, the defendants wanted 8.5 million dollars for the entire 10.09 acre parcel. Foley did not want to pay that price and only wanted enough land to operate a nursing home. The parties finally agreed on $5,250,000 for the nursing home buildings and an area around them, which a surveyor later determined was 3.74 acres. This became the land to be conveyed, described in Schedule A of the contract. At that time neither the plaintiff or the defendants were aware of the ten percent maximum coverage problem in the zoning regulations. In essence, the parties agreed that Foley was to receive 3.74 acres for $5,250,000, and Garofalo was to retain the remaining six acres for his own use and development. After the zoning problem was discovered, Garofalo was not willing to reform the contract by changing the purchase price or including the entire 10.09 acres, which he had been unwilling to sell initially for less than 8.5 million dollars. While he could have agreed to a modification of the contract, he had no legal obligation to do so. Garofalo also had no legal obligation to obtain a variance from the Fairfield Zoning Board of Appeals or apply to the Fairfield Zoning Commission for a change in the zoning regulations. Foley v. Southport Manor Convalescent Center, Inc., supra, 538. Foley has CT Page 2883 also requested the court to in fact reform the contract, and order the defendants to convey for the same price, "enough land to operate a nursing home" or to give Foley a ground lease for the 3.74 acre parcel. The zoning officials in Fairfield have indicated that since a ground lease does not create a separate parcel, that a lease rather than a conveyance of fee simple title would not place the nursing home in violation of the ten percent maximum coverage requirement.
It is clearly inequitable for the court to order conveyance of "enough land to operate a nursing home." First of all, this would require the conveyance of all or almost all of the 10.09 acre parcel for $5,250,000, a price over $3,000,000 less than the sellers' valuation of the entire property. In the alternative, such a conveyance would deprive Garofalo of over six additional acres of valuable land which he thought he was retaining under the contract. It would also give Foley 2.7 times as much land as he bargained for under the contract. Since neither party was aware of the zoning problem when the written contract was signed, it would be inequitable for Garofalo to sustain such a disproportional economic loss, particularly when the problem was not caused by him. [It is completely illogical to assume that the defendants would enter into a contract that if performed would create a zoning problem for both buyer and seller]. The case of Sink v. Meadow Wood Country Estates, Inc., 18 Conn. App. 569 is clearly distinguishable. There the parties contracted for the sale of an existing and approved subdivision lot. After the contract was signed the seller let the subdivision expire. Specific performance was ordered of a slightly larger and different reconfigured lot. In addition, the problem was caused by the defendant after the parties had entered into a binding contract to sell the lot. Id., 577.
In order to form a binding and enforceable contract, there must exist an offer and acceptance based on a mutual understanding by the parties. Cavallo v. Lewis, 1 Conn. App. 519, 520; Steinberg v. Reding, 24 Conn. App. 212, 214. The contract must be definite and certain as to its terms and requirements. Id. The written contract called for conveyance of a specifically described parcel of land with a stated acreage of 3.74 acres. The court cannot rewrite the contract between the parties and order a specific performance of a contract which the parties never entered into. Id, 214. See also Nann v. Pignatelli, 3 Conn. App. 74, 79. [Both of those cases involved an attempt to obtain a right of way in addition to the parcel of land called for under the contract.] The defendants have also raised as the tenth special defense the CT Page 2884 statute of frauds. It is well established that the statute of frauds, 52-550 of the General Statutes, requires a contract for the sale of real property to be in writing and that the terms of the contract must be clear. An action for specific performance of a contract must fail where the description of the property covered by the contract is vague and indefinite. Frabicatore v. Negyesi,105 Conn. 412, 414; Gendelman v. Mongillo, 96 Conn. 541, 540; Pigeon v. Hatheway, 156 Conn. 175, 184, 185. The written contract between the parties here does not refer to a parcel of sufficient size to operate a nursing home, or words to that effect. Even if it did, such a description would not satisfy the statute of frauds.
It would also be inequitable for the court to order the defendants to give the plaintiff a ground lease for 3.74 acres. Such an order would have the practical effect of tying up the entire property, including the six acres retained by Garofalo. The ten percent coverage requirement would allow Foley to operate the nursing home on the 3.74 acres covered by the ground lease, but that use would exhaust the ten percent coverage for the entire parcel, so that the six acres remaining to Garofalo would become useless unless he could obtain a variance or change in the zoning regulations. Such a result is clearly not within the understanding and expectations of the parties when they entered into the contract. Reformation of an instrument should only be ordered in compelling cases, and only to implement and carry out the intent of both parties to the agreement. Lopinto v. Haines, 185 Conn. 527,532. Allowing a ground lease for 3.74 acres would prevent Garofalo from using the remaining six acres, which was the expectation of the parties when they negotiated the price and acreage under the contract.
"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as a result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. "Id., 531, citing Greenwich Contracting Co. v. Bonwit Construction Co., 156 Conn. 123, 126. In its answer to the jury found that the defendants did not make a fraudulent misrepresentation that the land to be conveyed would be large enough to operate a nursing home under applicable governmental regulations. The answer to interrogatory indicates that the jury rejected a claim of mutual mistake over the zoning restriction. The standard of proof for reformation is the CT Page 2885 high standard of clear, substantial and convincing evidence, Lopinto v. Haines, supra, 534, which the plaintiff has not met. In addition, the amended complaint does not request reformation of the contract to change the description in schedule A or substitute a ground lease for a fee simple. It only requested in paragraph 5 of the prayer for relief, specific performance of the contract as reformed by the stipulated judgment of November 9, 1984.
The court rejects the plaintiff's claim that specific performance can be ordered for a 99 year ground lease of 3.74 acres under the concept of a lesser estate. The plaintiff concedes on page 10 of his trial brief of January 25, 1994 that there is no legal precedent which has ordered specific performance of a ground lease in lieu of a transfer of fee simple title. A lease is not a conveyance of title to the property. It creates a materially different estate from fee simple title and entirely different future obligations of the parties to each other and to others. A lease has tax, insurance and other legal consequences for the parties. The plaintiff's position in effect requires the court to write a long term lease for the parties covering terms which they never negotiated. Its fundamental that courts do not rewrite contracts for the parties. Heyman v. CBS, Inc., 178 Conn. 215,227.
Foley also relies on 5.2(b) of the Contract, which provides in part that if the seller is unable to convey the title to the property to the buyer free and clear of encumbrances or defects in title (other than those excepted from the contract), the buyer may elect to accept such title as the seller can convey upon payment of the purchase price. This provision only applies in the event of a defect in title. As previously noted, the zoning problem discovered by the parties after the contract was signed is not a problem of marketable title. Frimberger v. Anzellotti, Supra, 409; see also Holly Hill Holdings v. Lowman, 226 Conn. 748. Moreover, the contract specifically excepts zoning laws as an encumbrance on title.
Another barrier to specific performance is that Foley did not prove that he was ready, willing and able to purchase the property on the closing date, or within a reasonable time thereafter. In order to be awarded specific performance, the buyer must prove that he was ready, willing and able at all times to purchase the property, and must meet this burden even in a situation where the defendant-seller indicates refusal to participate in any closing. Frumento v. Mezzanotte, supra, 616; DiBella v. Widlitz, 207 Conn. 194, CT Page 2886 200. Accordingly, the plaintiff-buyer must prove his financial ability to go forward and come up with the funds to purchase the property under the terms of the contract. Id. 200; Steiner v. Bran Park Associates, 216 Conn. 419, 430. "If the buyer cannot prove these conditions precedent to the seller's obligation, the subject of specific performance is closed. Only when the buyer shows that he was ready, willing and able does the seller's breach become relevant. In order to obtain specific performance, it goes without saying that the plaintiff buyer must also prove that the defendant seller did not himself perform. Whether the issue of the defendants' alleged nonperformance, or the issue of the plaintiff's alleged readiness, willingness and ability, is considered first, is up to the trial court." Id., 430. Evidence at the trial indicated that the purchase was going to be virtually 100 percent financed by Health Care REIT which was going to have legal title to the property. It was obviously unwilling to advance any funds with the zoning problem encountered prior to the closing date. Without these funds Foley was unable to close title even if he had been ready and willing to do so. When a purchaser of land is left to depend upon a purchase price loan from a third party who was in no way bound to furnish such funds, the purchaser cannot be considered to be able to perform so as to be entitled to specific performance. Frumento v. Mezzanotte, supra, 617.
Finally, Foley's financial arrangements with Health Care REIT also demonstrate another problem with his ground lease proposal. By his own testimony, Health Care REIT required legal title in fee simple to the property, and Foley would then lease it back from the buyer. The conveyance would go directly from the defendants-sellers to Health Care REIT, not Foley, and it required fee simple title, not a long term lease.
Under the circumstances here, the plaintiff is not entitled to specific performance. Moreover, assuming there was a breach of contract, the jury has already awarded the plaintiff damages for the breach. The buyer may be limited to damages where under the circumstances the granting of specific performance would be inequitable. Botticello v. Stefanovicz, 177 Conn. 22, 33. Damages of $938,000 would fully compensate the plaintiff for any loss due to any breach of contract by the defendants, while at the same time leaving the defendants with the 10.09 acres and the nursing home to use as they may elect. Considering the zoning problem, among other factors, damages would be fairer result to both parties than specific performance. CT Page 2887
4. Refund of Deposit; Interest Claim
If is undisputed that the plaintiff paid the defendants $155,000 as a deposit on the reformed contract. The defendants have retained these funds since 1984. In addition to damages for breach of contract (the difference between the contract price and the market value of the property at the time of the breach) there must be a credit of any deposits made by the buyer towards the purchase price. Williams v. Breyer, 21 Conn. App. 380, 384. The jury was instructed not to consider the amount of the deposit in determining damages for breach of contract. Since Foley is not entitled to specific performance resulting in purchase of the property under the contract, the defendants must return to him the $155,000 deposit.
Foley also claims interest on the deposit from 1985 to date. While not controlling, it is noted that the parties deleted the provision providing for interest in the event of rejection of title due to a title defect or encumbrance in Paragraph 5.2(b) of the Contract, and in paragraph 7.7 which covers damages where the seller defaults. As previously discussed, where parties have not contracted for payment of interest, the right of a party recovering damages to receive interest is based upon whether or not the funds were wrongfully withheld from the other party. Bertozzi v. McCarthy, supra, 466. The fact that the sum is liquidated is a factor, but is not controlling. Id., 467.
Under the facts of this case, the plaintiff is not entitled to interest on the deposit. After the zoning problem became apparent, and Foley was not willing to take the 3.74 acres described in the contract due to the zoning restriction on coverage, the defendants offered to return the $155,000 deposit. Foley then refused to accept it. He has consistently opposed rescission of the contract. Under the circumstances, the deposit has not been wrongfully withheld by the defendants.
5. Declaratory Judgment
The first count of the defendants counterclaim requests a declaratory judgment determining the rights and obligations of the parties to the agreement dated September 30, 1984 and a decree rendering the contract null and void. The conditions for a declaratory judgment are contained in 390 of the Practice Book. See also 52-29 C.G.S. A declaratory judgment will not be made where the court is of the opinion that the parties shall be left to CT Page 2888 redress by some other form of procedure. Section 390(c), Connecticut Practice Book.
Most of the factual and legal issues in the counterclaim have been resolved by the jury's verdict or the court's previous rulings on the plaintiff's other claims. It is undisputed that the closing did not take place because of the zoning problem discovered by the buyer's attorneys in December 1984. The obligations of the parties were governed by the written contract, as reformed by the stipulated judgment of November 9, 1984. The defendants made no representations that the property and the nursing home business on it was in full compliance with the building and zoning regulations. See Paragraph 28, Counterclaim. However, the jury found that the defendants made a negligent misrepresentation which Foley relied upon, to the effect that the 3.74 acre parcel was large enough to operate a nursing home. This representation was made verbally prior to signing the contract. It was not incorporated into or made part of the representations in the contract itself. When Foley was unwilling to close because of the zoning problem, the defendants agreed to refund the deposit, but that offer was not accepted.
The rights of the parties are governed by the contract as revised by the stipulated judgment. Defendants had no legal obligation to correct the zoning problem by rewriting the contract, and were not required to perform some other contract. The jury has determined that the contract was breached and has determined the amount of the plaintiff's damages resulting from the breach. The court has refused to grant specific performance. The time for performance of the contract has long since passed. Neither party wants to perform the contract as written. Performance would not carry out the intent of the parties. A declaratory judgment is determined by the situation existing at the time of trial. Preston v. Connecticut Siting Council, 21 Conn. App. 85, 89. Neither party has any further rights under the contract.
The plaintiff is entitled a refund of $155,000.00, the amount of the deposit on the contract, in addition to any amounts that the plaintiff may be entitled to based upon the jury's verdict.
ROBERT A. FULLER, JUDGE CT Page 2889