RACHEL HYMAN v. ROSIE K. NICHOLSON

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 73605

Memorandum filed July 25, 1946.

*Robert I. Ellis,* of Hartford, for the Plaintiff.

*Ufa E. Guthrie,* of Hartford, for the Defendant.

COMLEY, J.   On April 24, 1945, the defendant entered into a written contract with the plaintiff for the sale of her property at 820 Wethersfield Avenue in Hartford, the transfer of title to be effected on May 15, 1945.   When the time for closing arrived, the defendant refused to convey and has ever since refused to perform the contract.   The plaintiff now seeks a decree of specific performance.

The defendant has filed six special defenses which fall into three categories, the first based upon the unsound mental condition of the defendant, the second based upon mistake and misunderstanding on the part of the defendant, and the third upon the plaintiff's fraud.

The claim of unsound mental condition is based largely on the defendant's testimony that at the time of the transaction in question she was addicted to such drugs as veronal and luminol, that her mental faculties and perceptions had thereby become blunted and that on April 24, 1945, she had taken such large

doses of these sedatives that she did not comprehend the contents of the contract which she signed on that day. The medical testimony on this point is vague and uncertain and whatever corroboration is to be found in the testimony of the defendant's witnesses is more than offset by Mr. D'Esopo's description of her conduct in his office at the time the contract was discussed, prepared and executed. He observed her to be mentally alert and normally intelligent throughout a lengthy conference in which she showed a lively comprehension of her own interests in such matters as the adjustments and the terms upon which she was to occupy the house for several months after the title had passed to the plaintiff.

'The defendant also claims that she be relieved from performing the contract because of a mistake as to the purchase price. The contract calls for a price of $10,000, in which is included an existing mortgage to a savings bank of $2,650, making the cash to be paid $7,350. The defendant testified that the plaintiff agreed to pay $10,000 in cash over and above the mortgage and that the defendant signed the contract in the mistaken belief that it so provided. Whatever may have been the figures discussed in the earlier negotiations or whatever may have been the defendant's construction or interpretation of those figures, there can be no dispute that the contract itself set forth the terms of payment clearly and distinctly. It is also true that the defendant's attorney explained them carefully and in detail. I find that there was no such mistake or misunderstanding on the part of the defendant as would now justify her in refusing to perform the agreement.

The chief claims of fraud advanced by the defendant are that the plaintiff concealed her true identity and misrepresented the purpose for which she was going to use the property. The plaintiff's real name is Pomerantz. In her dealings with the defendant and in making the contract she used the name of Hyman. The Pomerantz family are engaged in the bakery business and, apparently, have a local reputation for prosperity and financial responsibility. In her negotiations the plaintiff not only concealed her real name from the defendant but she also represented that she wanted the defendant's house as a residence for herself and her father, whereas her real purpose was to acquire the premises for use by her husband as a bakery. The plaintiff now says that her purpose in making these false statements concerning her name and her plans for the use of the property was to prevent her husband's brothers from knowing

that she and her husband proposed to operate a bakery. The more logical inference would seem to be that she hoped to keep down the purchase price by these untrue statements. Certainly this was the reaction of Mr. D'Esopo, who represented the defendant at the signing of the contract. It appears that after the contract had been executed the plaintiff gave in payment of the required cash deposit a check of the Pomerantz bakery. As soon as Mr. D'Esopo saw this check he said in effect to the defendant that, if he had known that the Pomerantz bakery was interested, "we could have gotten twelve or fourteen thousand for the property."

Whether or not this misrepresentation by the plaintiff comes within the rule laid down in *Brett* v. *Cooney,* 75 Conn. 338, 341, and *Morrow* v. *Ursini,* 96 Conn. 219, 221, so that a deed given in performance of this contract could be set aside, it is not now necessary to decide. The question here is whether this plaintiff is entitled in equity to a decree of specific performance. The remedy of specific performance will not be granted where it would be inequitable or unjust or unreasonable or where the contract is not free from surprise or mistake. *Schneidau* v. *Manley,* 131 Conn. 285, 289; *Burns* v. *Garey,* 101 Conn. 323, 328; *Kilday* v. *Schancupp,* 91 Conn. 29, 31.

If this contract had been wholly performed and the title to the property had passed, the defendant could not now set it aside without a positive demonstration that she had been induced by the plaintiff's fraud to do what she otherwise would not have done. But here she is only resisting the plaintiff's attempt to obtain the extraordinary equitable relief of specific performance. It seems to me that she has made a sufficient showing of unjust and inequitable conduct on the part of the plaintiff to sustain this defense. Mr. D'Esopo, her attorney, is both an experienced lawyer and an experienced dealer in real estate. As soon as the true facts came to light, his instantaneous reaction was that she should have and could have gotten more money for her property. She was relying to some extent at least on his advice and his judgment, and if the plaintiff had not deceived doth the defendant and Mr. D'Esopo as to her identity and her intended use of the property it is more than likely that no contract, or else a contract for a substantially higher price, would have been signed. Under these circumstances the plaintiff's prayer for relief for specific performance is denied.

There remains the question of the plaintiff's right to damages. "In case of a breach of contract to convey land, the injured party recovers nominal damages; and, in addition thereto, he may be entitled to recover the expense to which he has been subjected in preparing to carry out the agreement. Over and above these items, to recover substantial damages, loss in the bargain must be shown, i. e. the difference between the price fixed in the contract and the fair market value of the land at the time the contract was to be executed . . ." *Gray* v. *Greenblatt,* 113 Conn. 535, 537. In this case the plaintiff has offered no evidence of any expense in preparing to carry out the agreement. Furthermore, she has shown no loss in the bargain, for her expert real-estate witness fixed the value of the property in April, 1945, at $9,750, which is $250 less than the contract price. It follows that the plaintiff is entitled only to nominal damages.

Under the circumstances, it would not seem that much consideration need be given the cross-complaint, in which the defendant prays that the contract be voided and cancelled, for the only benefit to the defendant from such a judgment would be the avoidance of nominal damages and taxable costs. It is sufficient to say that while I am convinced that the plaintiff through her own conduct has barred herself from equitable relief, I am not at all convinced that the defendant has made out a case for a cancellation of the contract. The issues on the cross-complaint are found for the plaintiff.

Judgment is rendered for the plaintiff to recover damages of $25 and costs.