## JOHN NANN *v.* MARIA ELENA PIGNATELLI, EXECUTRIX (ESTATE OF CONSTANCE WILCOX PIGNATELLI) (2326)

HULL, SPALLONE and DALY, Js.

Argued October 9—decision released December 25, 1984

*Robert K. Walsh,* with whom, on the brief, was *Dianne E. Dusman,* for the appellant (plaintiff).

*Dean R. Singewald,* for the appellee (defendant).

DALY, J. The plaintiff has appealed[1] from a judgment of the trial court in favor of the defendant[2] denying

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The defendant is the daughter of Constance Wilcox Pignatelli who died in late 1977 before this case went to trial. By motion, Maria Elena Pignatelli was substituted as party defendant.

him specific performance and damages involving an option to purchase a lot.

The court found the following facts: The plaintiff, John Nann, is an insurance agent and a financial planner specializing in tax shelter plans. The defendant's decedent, Constance Wilcox Pignatelli, was in her late seventies and blind at the time the 1973 agreement was entered into. At one time, by virtue of inheritances from the Wilcox family of Madison, she had had substantial land holdings. Through the years, she and her only child, Maria Elena Pignatelli, now her executrix, frequently found themselves short of funds and sold parcels of the land to generate cash.

The parties entered into a written agreement on December 26, 1973, whereby the plaintiff secured options to purchase two lots owned by the defendant's decedent in the Middle Beach Road West area of Madison. In return for the options, the agreement called for the plaintiff to lend the defendant's decedent the sum of $5000, secured by a blanket mortgage on the subject lots. Interest on the loan was to be paid monthly at 8 percent. The option agreement provided that if the plaintiff were to exercise the first option, which concerns Lot No. 2, the $5000 loan would be applied toward the purchase price of $20,000, with the balance to be seller-financed in the form of a $15,000 purchase money mortgage. If the plaintiff were to exercise the second option, which concerned Lot No. 1, then the $15,000 purchase price would be similarly seller-financed with a purchase money mortgage.

Lot No. 1 was a landlocked parcel, bounded on two sides by other Pignatelli property. The plaintiff's attorney had drawn up the 1973 agreement in such a way as to insure that Lot No. 1 would have access through Lot No. 2, since under the option agreement the plaintiff would be exercising his option to buy Lot No. 2 first.

The option to buy Lot No. 1 had a year longer to run than the option on Lot No. 2.

As mortgagee, the plaintiff applied considerable pressure to the defendant's decedent, and in January, 1975, demanded payment of the mortgage in full together with unpaid interest from the preceding year. The plaintiff agreed to withdraw his demand in return for having his options to purchase Lots No. 1 and No. 2 extended. The interest rate on the mortgage was increased from 8 percent to 10 percent a year, and payment in full was to be made no later than January 1, 1976.

In December, 1975, the plaintiff instituted foreclosure proceedings against the defendant's decedent. Those proceedings were withdrawn in February, 1976, when the defendant's decedent repaid the loan in full with the proceeds from the sale of another of her properties.

On June 15, 1976, the plaintiff notified the defendant's decedent that he was exercising his option to purchase Lot No. 1. The option to purchase Lot No. 2 had already lapsed, on July 1, 1975. The plaintiff's stated position at the time he chose to exercise his option to purchase Lot No. 1 was that he expected a twenty-five foot access to go along with it. The defendant's decedent's response was that the option to buy Lot No. 1 did not include a twenty-five foot right of way and that, in fact, it had been knowingly excluded. The defendant's decedent contended that the parties had agreed that the plaintiff would have access through Lot No. 2, or that he would seek access elsewhere through the property of one of the abutting owners. A letter written by the plaintiff confirmed that he knew the option to purchase Lot No. 1 did not include a twenty-five foot right of way.[3]

---

[3] The letter, dated March 25, 1974, was from the plaintiff to Dennis O'Brien, a friend of and advisor to the defendant's decedent. The perti-

The defendant refused to comply with the plaintiff's demands, and would not sell him Lot No. 1. The plaintiff then instituted his action for specific performance of the contract for a conveyance of Lot No. 1 and monetary damages. The trial court found for the defendant, indicating that the plaintiff's failure to exercise the first option made the second option impossible to perform since an easement by necessity would be necessary.

The plaintiff first claims that the trial court erred in admitting parol evidence regarding the intent of the parties to contradict the unambiguous terms of the written contract for the sale of land. The law in Connecticut is that an objection must be made and an exception must be taken to make a ruling a ground for appeal. Practice Book § 288; Holden & Daly, Connecticut Evidence (1966 and Sup. 1983) § 13. The plaintiff did not appropriately object or take exception at the trial level. We thus will not consider the evidentiary ruling where no claim of error was preserved for review on appeal by proper objection and exception. *State* v. *Braman,* 191 Conn. 670, 684, 469 A.2d 760 (1983).

The plaintiff next argues that, as the defendant failed to show that obtaining an alternative right of way was a condition precedent to the existence of the contract, the plaintiff's inability to do so does not excuse the defendant's refusal to perform. "Whether the perform-

nent portion of the letter states: "[M]ay I propose the following: I will provide the Pignatellis with a mortgage on the approved building lot on which I now hold a purchase option in exchange for two considerations. First, that I will be granted by Princess Pignatelli the right of way which the town has established through the cottages located on Middle Beach Road West, with the provision that the access as now established, will be moved to an easterly or westerly direction in the future, should it prevent that parcel of land on which the cottages are located from being developed as a building lot. The reason the Princess has expressed for her reluctance to grant this right of way in the past was based on her concern that as it has been established by the town, it would prevent her from utilizing (or selling) this parcel as a building lot."

ance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in the light of the circumstances surrounding the execution of the instrument." *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645 (1970).

The option agreement did not contain any description of a right of way or access over other Pignatelli property bounding on the two lots. Together, the two lots offered the plaintiff access. If he chose to bypass the purchase of Lot No. 2, he left himself with an option to purchase a landlocked piece of property. The trial court specifically found that this was the bargained for agreement, and it did not find any condition precedent involving a right of way.

The plaintiff next claims that the court abused its discretion in failing to grant specific performance on equitable grounds. It is basic law that an action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles. *Morris* v. *Costa,* 174 Conn. 592, 599, 392 A.2d 468 (1978). *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 25, 166 A.2d 710 (1960).

"Applications for specific performance of agreements to sell land are addressed to the discretion of the court which must determine upon the facts and under the circumstances whether the contract is fair, reasonable, on good consideration, free from fraud, surprise or mistake and made according to the requirements of the law. *Sidor* v. *Kravec,* 135 Conn. 571, 573–74, 66 A.2d 812 [1949]. As a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution of the contract even though

the property contracted to be sold becomes considerably more valuable at the time performance is due." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 18–19, 420 A.2d 1142 (1979).

The plaintiff's uncontroverted testimony at trial was that he would not accept Lot No. 1 in a landlocked condition. Evidence was also received that the defendant's decedent had no objection to selling Lot No. 1 to the plaintiff, the right of way aside. The trial court concluded that the plaintiff's unwillingness to accept title to Lot No. 1, unless accompanied by a twenty-five foot wide access easement which had not been part of his option rights, prompted the defendant's decedent's nonaction in response.

Specific performance is a form of equitable relief which rests in the sound discretion of the court. *Lanna* v. *Greene,* 175 Conn. 453, 458, 399 A.2d 837 (1978). We cannot say that the trial court abused its discretion in refusing to order specific performance. See *Hyman* v. *Nicholson,* 14 Conn. Sup. 240 (1946).

The plaintiff's last claim of error is that the trial court's conclusion that the plaintiff rendered the second option impossible to perform by failing to exercise the first option is unsupportable in the law and by the facts of the case. The law is well settled that if a person promises absolutely, without exception or qualification, that a certain event shall take place and the thing to be done or the event is neither impossible or unlawful at the time of the promise, he is bound by his promise unless the performance, before that time, becomes unlawful. *Straus* v. *Kazemekas,* 100 Conn. 581, 588, 124 A. 234 (1924).

The trial court injected the issue of impossibility of performance although it was not raised in the pleadings. The facts here do not present a case of impossibility. There are grounds, however, to support the trial

court's decision. When sitting in equity, a court has broad discretion to act. If under the circumstances specific performance would be inequitable, which form of relief will be accorded rests in its sound discretion, depending upon the equities of the case, and based on reason and sound judgment. *Schneidau* v. *Manley,* 131 Conn. 285, 289, 39 A.2d 885 (1944). Although the trial court's decision rests upon mistaken grounds, the result reached was correct for the reasons stated in this opinion and we, therefore, affirm the judgment rendered. *Cheshire* v. *McKenney,* 182 Conn. 253, 261, 438 A.2d 88 (1980); see *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); Maltbie, Conn. App. Proc. § 36.

There is no error.

In this opinion the other judges concurred.