J AND B WESTON AUTO PARK ASSOCIATES ET AL. *v.*
HARTFORD REDEVELOPMENT AGENCY ET AL.
(8823)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 24, 1990—decision released January 29, 1991

*Jeffrey J. Mirman,* with whom, on the brief, was *Maura L. Hughes,* for the appellants (plaintiffs).

*Richard M. Cosgrove,* senior deputy corporation counsel, with whom, on the brief, was *Kenneth B. Kaufman,* assistant corporation counsel, for the appellees (defendants).

LAVERY, J. The plaintiffs, J & B Weston Auto Park Associates and Jetobra, Inc., doing business as Hoffman Enterprises, appeal from the judgment of the trial court which held that the plaintiffs were not third party beneficiaries of an alleged agreement between the named defendant[1] and Weston Park Associates (WPA), a developer. The plaintiffs sought a decree of specific performance directing the defendants to execute a deed conveying certain redevelopment land to them, or to pay them damages for breach of contract. We affirm the judgment of the trial court.

The plaintiffs claim that the trial court improperly concluded that (1) no binding agreement existed between the defendant Hartford Redevelopment Agency and WPA following the adoption of the defendants' resolution of September 17, 1987, (2) the plaintiffs were not third party beneficiaries of an alleged contract between the defendant agency and WPA, (3) any rights of the plaintiffs as third party beneficiaries terminated when WPA withdrew as the redeveloper and the defendant agency rescinded its September 17, 1987 resolution, (4) the defendants were not estopped from denying the plaintiffs a right to acquire the property or to damages resulting from the defendants' conduct, and (5) the defendant agency did not violate the plaintiffs' property rights without due process of law.

---

[1] The plaintiffs brought this action against the named defendant, the city of Hartford and Michael Peters, the chairman of the redevelopment agency.

The dispositive issue is whether the trial court was correct in finding that there was no binding agreement between the defendant Hartford Redevelopment Agency and WPA.

The trial court found the following pertinent facts. In 1986, the defendant agency approved the nomination of WPA as the tentative developer of approximately fifteen acres of redevelopment land for the purpose of constructing facilities for the plaintiffs and others. On June 18, 1987, the agency adopted a resolution agreeing to sell two parcels, comprising approximately 12.7 acres, to WPA as redeveloper for the price of $1.95 per square foot for purposes of constructing an automotive business facility for the plaintiff. Upon completion of the construction, the parcel was to be sold to the plaintiffs at WPA's cost of $1.95 per square foot with WPA's profits to be derived from the construction of the facility. The resolution stated that the proposal conformed to the redevelopment plan and was conditioned upon a disposition agreement between the agency and the redeveloper. In fact, no disposition agreement had been drafted at that time. The resolution was forwarded to the Hartford Common Council for its approval. On August 25, 1987, the Common Council approved the resolution with the caveat that any substantial change in the plans should be sent to it for further approval. On September 17, 1987, the agency adopted a resolution granting final approval of a disposition agreement between the agency and the redeveloper and approving the resale of a portion of the property to the plaintiff.[2] The resolution authorized

---

[2] The disposition agreement referred to in the agency's resolution was to have consisted of the precise terms of the sale by the agency to the redeveloper, including the selling price, the date of conveyance, the amount of redeveloper deposit to assure performance of the obligation of the redeveloper and the right of the agency to retain it on failure of the redeveloper to perform, the time for commencement of the improvements on the site, the time for submission of construction plans, the time for sub-

the chairman or vice-chairman of the agency to execute the disposition agreement, the deed for the properties and the employment agreement for Hartford residents pertaining to permanent job opportunities to be derived from the development. The agency reserved the right to review and void the resolution should the redeveloper fail to execute the disposition agreement prior to January 21, 1988. No disposition agreement was prepared at that time.

During the September 17, 1987 meeting, the agency contemplated changes by WPA and reserved final approval until it could review and approve those changes. Although authorized to execute a disposition agreement with WPA, the chairman would do so only when the new plans for the plaintiffs' facilities were finalized and accepted by the agency. On September 28, 1987, the plaintiffs wrote to WPA proposing that they purchase an additional 6.5 acres of land within the development and that the whole project be redesigned. On October 15, 1987, WPA presented revised plans to the agency.

On October 27, 1987, a meeting was held between WPA and the plaintiffs. At that meeting, the plaintiffs' real estate director told WPA that the agency would not approve the revised site plan and therefore the plaintiff had the choice of either going forward with the original approved plan or abandoning the project. In response, WPA requested a decision from the plaintiffs as soon as possible because further delay would jeopardize existing plans. Despite repeated attempts by WPA to elicit a decision, the plaintiffs never responded to WPA with an answer.

mission of commitment of mortgage financing, an assurance of priority consideration for permanent employment given to city residents, and a guarantee that at least 15 percent of total project construction value of improvements on the site would go to minority and female owner contractors, and that the project would be in compliance with the Greater Hartford Affirmative Action Plan.

On January 20, 1988, WPA wrote to the plaintiffs indicating, inter alia, that unless the plaintiffs were prepared to move forward on the original site plan, WPA did not want to continue its involvement with the redevelopment project. The plaintiffs did not respond. Thus, as a direct result of the plaintiffs' inaction, no disposition agreement was ever executed between the agency and WPA.

On February 11, 1988, WPA wrote a letter to the agency relinquishing its status as the designated developer. On February 17, 1988, the plaintiffs' counsel wrote to the agency requesting that the agency immediately transfer the two parcels to his clients. On February 18, 1988, the agency adopted a resolution accepting WPA's withdrawal and rescinding final approval of the disposition agreement contained in its resolution of September 17, 1987, as well as rescinding the nomination of WPA as developer.

On appeal, we must determine whether the decision of the trial court was clearly erroneous. Practice Book § 4061. Thus, the plaintiffs can prevail only if they sustain their burden of showing that the trial court's factual findings were clearly erroneous in view of the evidence and pleadings in the whole record. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In the absence of definitive contract language, the determination of what parties to a contract intended is a question of fact for the trial court and is not reversible unless the trial court could not reasonably have arrived at its conclusion. *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 130–31, 523 A.2d 1266 (1987); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); *Mayfair Roofing & Renovating Co.* v. *Ramco Technologies, Inc.,* 18 Conn. App. 682, 687, 560 A.2d 464 (1989).

On the basis of the evidence adduced at trial, the court, in a well reasoned memorandum of decision, concluded that there was no contract between the agency and WPA because both parties knew that before their contract could be finalized several essential requirements had to be met. These requirements included, inter alia, agency approval of the final site plan for the plaintiffs' facilities, execution of an employment and training agreement, acceptance of an affirmative action compliance memorandum and approval of the disposition by the state department of economic development. On September 17, 1987, although the agency had tentatively approved the original site plan, a revised plan had already been contemplated and that revised plan was never approved by the agency. In addition, the resolution of September 17, 1987, required that the disposition agreement be signed by January 21, 1988, or else the agency could void the resolution. That disposition agreement was never signed. On February 18, the agency voided the resolution.

" '[A] contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete.' " *New Haven Tile & Floor Covering Co.* v. *Roman,* 137 Conn. 462, 464, 78 A.2d 336 (1951). In this case, there were a number of steps left undone and it is clear that neither party viewed the other as being bound to the incomplete agreement.

The trial court's decision that no contract existed between the agency and WPA cannot be disturbed. Because no contract exists, no right in the plaintiffs as third party beneficiaries exists. "A promise creates

no duty to a beneficiary unless a contract is formed between the promisor and the promisee . . . ." 2 Restatement (Second), Contracts § 309 (1).

The judgment is affirmed.

In this opinion the other judges concurred.