[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
PROCEDURAL BACKGROUND
This vigorously contested action relating to a tract of land in the Oswegatchie Hills section of the Town of East Lyme, Connecticut, was instituted by writ, summons and complaint returnable on May 23, 2000. Plaintiff (hereinafter Landmark or plaintiff), a land development firm, filed an amended complaint on October 24, 2000, seeking specific performance of the terms of an Option Agreement dated April 9, 1999 as extended in Count One, specific performance of what is alleged to be a new option agreement entered into on April 18, 2000 in Count Two, unspecified monetary damages for breach of contract in Count Three and a permanent injunction restraining the defendant from conveying or disposing CT Page 2827 of the property that is the subject of this lawsuit in Count Four. On May 23, 2001, the defendant (hereinafter TMK or defendant), a partnership which owned the property in question, filed an Answer and Special Defenses. The first, second, third and fourth Special Defenses essentially plead that the defendant had no obligation under the Option because of the Plaintiff's breach of its terms and the failure to make payments required. In the fifth special defense the defendant claimed the complaint failed to state a claim upon which relief could be granted. In the sixth special defense it claimed the benefit of the Statute of Frauds. In the seventh and last special defense the defendant claimed plaintiff was not entitled to attorney's fees. The Special Defenses were denied by Landmark on June 6, 2001 and the matter was claimed to the trial list on that date for a trial to the court. On October 18, 2001 the matter was set down for trial beginning January 29, 2001. TMK amended its Answer on January 29, 2002 and the matter proceeded to trial. Both parties were represented by counsel, presented evidence, argument and filed memoranda in support of their respective claims.
The principle issue raised by the parties was whether or not the various communications between the parties after the expiration of the original Option Agreement constituted a new Agreement which is binding upon the defendant.
THE LAW
The law of contracts and fraud is central to the decision in this case, especially as it relates to real estate.
"The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. Fortier v. Newington Group,Inc., 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922,625 A.2d 823 (1993)." (Internal quotation marks omitted.) Avon MeadowCondominium Assn., Inc. v. Bank of Boston Connecticut, 50 Conn. App. 688,695, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. See Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830 (1981);Augeri v. C.F. Wooding Co., 173 Conn. 426, 429-30, 378 A.2d 538 (1977);Cavallo v. Lewis, 1 Conn. App. 519, 520, 473 A.2d 338 (1984). "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." Bridgeport Pipe Engineering Co. v.DeMatteo Construction Co., 159 Conn. 242, 249, 268 A.2d 391 (1970). If the minds of the parties have not truly met, no enforceable contract exists. See Fortier v. Newington Group, Inc. supra, 30 Conn. App. 510. "[A]n agreement must be definite and certain as to its terms and CT Page 2828 requirements." (Internal quotation marks omitted.) Id. "So long as any essential matters are left open for further consideration, the contract is not complete." 17A Am.Jur.2d, Contracts § 32 (1991).
"[A] contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete." (Internal Quotation Marks Omitted) J BWeston Auto Park Associates v. Hartford Redevelopment Agency,24 Conn. App. 36, 41, 585 A.2d 112 (1991).
"`An option, originally, is neither a sale nor an agreement to sell. It is not a contract by which one agrees to sell and the other to buy, but it is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time.' 77 Am.Jur.2d, Vendor and Purchaser § 28; see Smith v. Hevro RealtyCorporation, 199 Conn. 330, 336, 507 A.2d 980 (1986)." Cutter DevelopmentCorporation v. Peluso, 212 Conn. 107, 110, 561 A.2d 926 (1989). "The option to purchase relates to an interest in land and is subject to the statute of frauds . . . Under our statute, the option must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." (Citation omitted; internal quotation marks omitted.) Pigeon v. Hatheway,156 Conn. 175, 181-82, 239 A.2d 523 (1968). "Option agreements relating to interests in real property fall within the Statute." Montanaro Bros.Builders, Inc. v. Snow, 190 Conn. 481, 485, 460 A.2d 1297 (1983).
The Statute of Frauds, General Statutes § 52-550, bars actions where there is not a sufficient memorandum in writing signed by the party to be charged. "In an action to enforce a contract for the sale of real property, the party to be charged, within the meaning of the statute, is the party against whom the contract is to be enforced." Kasper v.Anderson, 5 Conn. App. 358, 362 cert denied, 197 Conn. 818. 501 A.2d 388
(1985); 72 Am.Jur.2d, Statute of Frauds § 364; 1 Restatement 2d, Contracts 1135, comment a. In this case that is the defendant partnership. To form a valid real estate contract, General Statutes §52-550 requires that the essential terms of a contract be set forth therein. Scinto v. Clericuzio, 1 Conn. App. 566, 568, 474 A.2d 102
(1984).
A contract must be supported by consideration. Vachon v. Tomascak, CT Page 2829155 Conn. 52, 56, 230 A.2d 5 (1967).
The validity of a substitute contract is "determined in the same manner as in the case of any other contract, with respect to such matters as mutual assent and consideration. " Corbin on Contracts § 1293 (1962).
"[A]cceptance must be unequivocal. . . . Where terms for changing the legal relations between two parties are offered by one party to another, those terms must be explicitly, fully and unconditionally accepted. . . ." (Citations omitted; internal quotation marks omitted.) Leigh v.Smith, 138 Conn. 494, 496, 86 A.2d 567 (1952).
A partnership may be bound by the acts of a partner acting in the ordinary course of the partnership business (Uniform Partnership Act, General Statutes Sec 34-47) unless he was acting without authority and the party with whom he was dealing has knowledge of the fact that he has no such authority. Standish v. Sotavento Corp., 58 Conn. App. 789,755 A.2d 910 (2000).
When a partnership incurs an obligation, the partners become jointly liable. General Statutes, Sec. 34-53 (1).
"`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.'" Alexander v. Church, 53 Conn. 561, 562, 4 A. 103
(1886). (Internal quotation marks omitted.) "Fraud vitiates all contracts, written or verbal and sealed or unsealed." Pacelli Bros.Transportation, Inc. v. Pacelli, 189 Conn. 401, 409, 456 A.2d 325 (1983) citing Feltz v. Walker, 49 Conn. 93, 98 (1881). "`The principle is often stated . . . that fraud destroys the validity of everything into which it enters, and that it vitiates the most solemn contracts, documents, and even judgments.' 23 Am.Jur. 770, Fraud and Deceit, § 19."99 Pratt St. Corp. v. Stand Realty Corp, 27 Conn. Sup. 101, 103,230 A.2d 613 (1966).
Fraud includes all acts, omissions and concealments, by which an undue and unconscientious advantage of another is taken. Pacelli Bros.Transportation, Inc. v. Pacelli, supra, 189 Conn. 410. Ordinarily to prove fraud a party must show that there was a representation of a fact; that the fact, if disclosed, was untrue when asserted, that it was known by the speaker to be untrue; that the purpose of the statement was to induce the listener to act on it, and that the listener did rely upon it and act to his injury. Ceferatti v. Boisvert, 137 Conn. 280, 283,77 A.2d 82 (1950). Fraud in the inducement to enter a contract is an equitable defense. Connecticut National Bank v. Voog, 233 Conn. 352. 367, 659 A.2d 172 (1995). CT Page 2830
Fraud must be proved by "clear and satisfactory or clear, precise, and unequivocal evidence." Meyers v. Cornwell Quality Tools, Inc.,41 Conn. App. 19, 674 A.2d 444 (1996).
Specific performance with respect to a real estate agreement is not appropriate unless there exists a binding contract which "is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy, and free from fraud, surprise or mistake." (Citations omitted; emphasis added). Sidor v. Kravek, 135 Conn. 571, 574, 66 A.2d 812
(1949).
A decision of whether to order specific performance is within the court's sound discretion, Nann v. Pignatelli, 3 Conn. App. 74, 78,485 A.2d 922 (1984), cert. denied. 196 Conn. 805, 492 A.2d 1240 (1985). It is an equitable remedy and the Court must find that the Plaintiff acted fairly and equitably throughout. See Collens v. New Canaan WaterCo., 155 Conn. 477, 492, 234 A.2d 825 (1967). A court should not grant specific performance of a contract where Plaintiff's misrepresentations led to execution of agreement, as "[e]quity will not knowingly become an instrument of injustice." Warner v. Grion, 58 A.2d 98, 101
(NJ Chancery Court 1943) (specific performance denied where agreement procured through fraud or mistake).
In an action for specific performance not only must the Plaintiff show that there was an agreement and that it was ready, willing and able to perform but for the Defendant's breach (of an alleged agreement), the Plaintiff must additionally show that he or she continues to be ready, willing and able. Calamari Perillo The Law of Contracts, 4th
Edition, § 16-12 pp. 624-625, citing Allen v. Nissley, 184 Conn. 539,542, 440 A.2d 231 (1981). The mere tender of a draft or note, without more, is not of itself evidence of the ability to perform. "[A]n uncertified and unaccepted check `does not constitute a transfer of any money to the credit of the holder; it is simply an order which may be countermanded, and payment forbidden by the drawer, at any time before it is actually cashed. It creates no lien on the money which the holder can enforce against the bank. It does not itself operate as an equitable assignment.' The same is true of this check upon which the maker could have stopped payment up to such time as it had been accepted by the bank." Leary v. Citizens Manufacturers Nat. Bank. 128 Conn. 475, 481,23 A.2d 863 (1942); see also Frumento v. Mezzanotte, 192 Conn. 606,616-617 (1984) (burden is on Plaintiff to show it has sufficient funds to perform); and Eastern Consolidators, Inc. v. W. L. McAviney Properties,Inc., 159 Conn. 510, 271 A.2d 59 (1970).
The plaintiff has the burden of proof of the claims plead in the CT Page 2831 complaint by a preponderance of the evidence. Northrop v. AllstateInsurance Co., 247 Conn. 242 (1998).
The burden of proving the special defenses lies with the defendant.Selvaggi v. Miron, 60 Conn. App. 600 (2000).
"The general rule of law known as the `American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. " Marsh, Day Calhoun v. Solomon, 204 Conn. 639, 652,529 A.2d 702 (1987). Connecticut adheres to the American rule." Id; see also Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 14,513 A.2d 1218 (citations omitted) (1986). "[A]ttorney's fees are not allowed to the prevailing party as an element of damage unless such recovery is allowed by statute or contract." A. Secondino Son, Inc. v.La Ricco, 19 Conn. App. 8, 15, 561 A.2d 142 (1989).
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The court, after hearing the evidence and giving consideration to the credibility of the witnesses and drawing reasonable inferences from the same, makes the following findings of fact and conclusions of law.
Defendant, TMK Associates is a partnership formed in 1987 with the DiLoreto brothers, George Mitchell and George Kanabis as named partners. (Plaintiff's Exhibit 12). Over the years various family members of the Mitchell and Kanabis family have been treated by the parties as having an interest in the partnership but no documentation was offered to the court. The primary negotiator for the partnership at all times herein relevant was George Mitchell. George Kanabis acted as the partnership attorney. Agreements concerning partnership property (as opposed to negotiations) were ordinarily not entered into on behalf of the partnership until a meeting in person or by telephone was had between Mario DiLoreto, who spoke for his brothers, George Mitchell, who spoke for his family members, and George Kanabis, who spoke for the member of his family interested in the partnership. The plaintiff had knowledge of these procedures which had been followed in their dealings with the partnership before April 17, 2000.
TMK owns a parcel of land in the Oswegatchie Hills region of East Lyme, Connecticut, a portion of which it had previously developed (hereinafter "the property").
In 1991 TMK obtained a Wetlands Permit (Defendant's Exhibit 5) in connection with a potential development of the property. Such a permit was essential for any development of the property which included some CT Page 2832 wetlands. East Lyme revoked the permit and, after litigation, (see TMKAssociates vs. Town of East Lyme, CV-91-0518108-S) the permit was reinstated, and extended (Defendant's Exhibit 6).
Plaintiff is an LLC with offices in Middletown, Connecticut. It was interested in pursuing the development of the defendant's property either alone or in conjunction with other contiguous property in the area. On April 9, 1999 the Plaintiff and Defendant entered into an Option Agreement ("Option" or "Original Opinion") for the property. (Plaintiff's Exhibit 2). The Option required Landmark to file applications for development of the property and provide to TMK all applications, plot plans, site plans, surveys, and engineering drawings used in the applications if the Option was not exercised (Plaintiff's Exhibit 2). The Option also provided that changes could not be made orally, only by an agreement signed by the party against whom enforcement of the change is sought and written notice of the exercise must be sent by registered or certified mail. The Option expired, according to its terms, at 12:00 p.m. on March 31, 2000 unless $49,000.00 was paid by that date and time or the Plaintiff exercised its Option. It contained a provision that time was of the essence.
The Plaintiff's duly authorized agent for negotiations with the defendant at all times relevant to this case was Gus Demady. At the time of the trial he was no longer employed by the plaintiff which had retained his notes and records. The plaintiff's manager was Glenn Russo who was authorized to act for the LLC and who testified at the trial.
At various times in 1999 and again in 2000 the Plaintiff sought to extend the Option beyond the March 31st termination date. The primary controversy between the parties concerned what actually happened during this process and what is the legal effect of the same. The testimony was conflicting. Mr. Demady claimed to have made notes of his activities, telephone conversations and meetings either contemporaneously or at the end of the day of the event because the plaintiff had many real estate matters pending concerning which he conducted negotiations. Some notes of Gus Demady were introduced (Plaintiff's Exhibit 27 and 28) relating to March 2000 suggesting that there were contacts between him and George Mitchell. From those notes and the relevant testimony it is found that no terms were agreed upon prior to the expiration of the term of the option on March 31, 2000. It is troubling, however, that Demady made it clear during his testimony that the plaintiff had not introduced all of his notes of conversations and meetings. No explanation was offered as to the missing notes or their contents. Also it is noted that the notes allegedly written contemporaneously with the events did not reflect or confirm some of the critical assertions of the plaintiff's witness Demady. Also Defendant's Exhibit 14, an affidavit signed by Demady on May 30, 2000 did not support the claims of the witness at the trial. CT Page 2833
At one point the plaintiff provided a proposed written agreement for TMK's review (Defendant's Exhibit 1). As late as March 20, 2000 the defendant notified Landmark that it would not renegotiate the Option unless the $49,000 was paid by March 31, 2000 (Defendant's Exhibit 4). Plaintiff during this period sought to purchase a portion of the subject parcel, which was in the RU-200 Zone, instead of extending the Option for the entire piece.
On March 28, 2000, George Kanabis, as attorney for TMK, sent a list of terms that would be included in any amendment to the existing Option. (Plaintiff's Exhibit 7). Up to this point in time the parties had always transacted business using written agreements. The defendant contemplated that if there was to be an extension or amendment of the Option it would ultimately be drafted in that form by the Plaintiff after the negotiators had reached accord on proposed terms and then submitted for review by the partnership. At that time the defendant partners were disappointed with the fact that the plaintiff had "tied up" the property for a year without significant progress regarding any proposed development. The only evidence at the trial of any proposed development was testimony about a drawing or sketch of a possible golf course. While it appeared that the drawing discussed had a relationship to the boundaries of the property, it is found that the "on the ground" topography would not have permitted that plan to be developed. There was no evidence that any permits relating to the same had been obtained.
After receiving the March 28, 2000 letter, the Plaintiff immediately faxed back a rejection (Plaintiff's Exhibit 4) proposing additional terms and rejecting some of TMK's terms. On March 30, 2000, in response to Plaintiff's rejection, Attorney Kanabis faxed another letter to the Plaintiff, again noting that payment of the $49,000.00 was essential for any extension. (Plaintiff's Exhibit 5). The Plaintiff did not tender the $49,000 by March 31, and the Option expired by its terms. At that time there were no outstanding agreements between the plaintiff and the defendant relating to the property and no outstanding offers by the defendant.
In the beginning of April, 2000 the Town of East Lyme once again sought to revoke TMK's wetlands permit. TMK brought suit in April (Defendant's Exhibit 3), see TMK Associates vs. Town of East Lyme CV-00-0554742-S, and, the permit was restored in July, 2000.
The suggestion by the plaintiff's witness Demady that there was a conversation in which Kanabis suggested that the terms of the March 28, 2000 letter could become an amendment to or extension of the original option with the addition of language suggested in his April 18, 2000 fax CT Page 2834 (Plaintiff's Exhibit 6) is not credible. The March 28, 2000, letter, it is concluded, was merely a listing of terms that would be part of an agreement, if any agreement had been reached by March 31, 2000. Defendant did not intend a contract to be created out of that letter, or out of that letter and the April 18th fax.
The activities on April 18, 2000 are central to the issues in the case. The testimony of the parties' was at variance. The court finds the testimony of the defendant's witnesses more credible.
On April 18, 2000 Demady called Attorney Kanabis' office to make an appointment for that afternoon. He then called George Mitchell of TMK at 9:16 a.m. and spoke to him for 10 minutes. Mr. Demady told Mr. Mitchell he was coming down with $49,000. Mr. Mitchell told him that there was no agreement and not to come because it would be a waste of his time. Between 9:20 and 9:30 Mr. Demady sent Mr. Mitchell a fax of the March 28th Kanabis letter with a "consent and agreement" dated April 17th
typed onto it (Plaintiff's Exhibit 16).
Sometime after this Mr. Kanabis talked on the telephone with Demady, who falsely misrepresented to him that he, Demady, had reached an agreement with Mr. Mitchell based on the terms of the March 28, 2000, letter. He said he would be coming to Mr. Kanabis' office in New London that day with a check. Attorney Kanabis, on the basis of that misrepresentation, reviewed the letter, and faxed Demady a sentence he would like in any revised Agreement to be prepared (Plaintiff's Exhibit 6). Here it is found, established by clear, precise and unequivocal evidence, that Mr. Demady, as a representative of the plaintiff, misrepresented his conversation with Mr. Mitchell to Attorney Kanabis, falsely claiming an agreement had been reached, in an attempt to induce an agreement where none existed. It is found and concluded from clear and satisfactory evidence that the plaintiff's negotiator's conduct was fraudulent and deceptive which should not be permitted to benefit the plaintiff even if the Court otherwise were to find a valid agreement. Mr. Demady's false and fraudulent statements on April 18th to Mr. Kanabis constituted a fraudulent act which induced him to send the fax, and preclude the Plaintiff from relying on it to its benefit.
Shortly thereafter Mr. Mitchell contacted Mr. Kanabis and told him he had not in fact agreed on the terms of the March 28, 2000, letter but that, on the contrary, he had told Mr. Demady not to come. Attorney Kanabis tried to contact Mr. Demady by telephone, but did not reach him.
Mr. Demady arrived in the afternoon and showed a check made out for $49,000 (Plaintiff's Exhibit 26) and the March 28, 2000 letter with an endorsement typed on the bottom, signed by the Plaintiff's manager, to CT Page 2835 Attorney Kanabis (Plaintiff's Exhibit 25). Attorney Kanabis told him TMK had not agreed to accept Plaintiff's offer. These exchanges on April 18, 2000 did not constitute a meeting of the minds of the parties. No new agreement or option was created. The original Option was not extended by these communications. Ten days later Plaintiff instituted a suit for specific performance and other relief
Even if there had been an outstanding offer based upon the March 28, 2000 letter (which the court does not find), as the plaintiff claimed at trial, waiting to be "accepted" by the plaintiff, the only evidence offered relating to whether the plaintiff was ready, willing and able to consummate the transaction was a check in the amount of $49,000.00 written on April 18, 2000 (Plaintiff's Exhibit 26) and a bank statement from Liberty Bank purporting to show the balances of the Plaintiff in the same business checking account against which the check was drawn. This exhibit showed that on April 18, 2000 there was not sufficient funds in the account to cover the check (Plaintiff's Exhibit 29.). Substantial deposits were not made until days later. Any testimony to the contrary by Mr. Russo was not credited by the court. In fact, in an effort to show that funds were available in the checking account, the plaintiff offered evidence of a deposit which on examination by the plaintiff had actually related to a date one year subsequent to the transaction. The plaintiff did not establish its financial ability to complete the transaction with respect to the option price or the purchase price either on April 18, 2000 or at the date of the trial. In other words, it is found that the plaintiff was not ready and able to consummate the transaction.
Also there were irregularities with regard to the signatures on the endorsement placed on the March 28, 2000 letter by the Plaintiff's manager Russo and forwarded to Kanabis as an effort to "accept" the alleged offer and create an obligation on the part of the defendant. Russo had signed at that location on the page on April 17, 2000 (the date next to the signature) but the language found above his signature when it was forwarded to Kanabis was added on the 18th. The language which was there when signed had been "whited out" or covered over by some process by Mr. Demady. The plaintiff's witness first suggested that the modification had been initialed by Russo after the modification but had to correct his testimony when it was brought to his attention that the initial was present on the 17th. It showed up on other copies with the pre-existing language. The court does not credit the testimony that this substitution was authorized by Russo.
Under all of the circumstances of this case, it would not be equitable to allow the plaintiff to enforce a contract against the defendant even if one were found to exist. CT Page 2836
No evidence of damages was offered or found although the plaintiff claims to be entitled to attorney's fees and reserved the right to offer proof on that issue if the court found an the plaintiff entitled to the same. Also, the plaintiff introduced into evidence some bills for engineering work (which were not produced during discovery). (Plaintiff's Exhibit 30).There was little testimony concerning the bills. The bills themselves leave real doubts that they all relate to the property. Some relate to ASW Project No. 1179 which is a proposed Golf Course in East Lyme (June 6, 1999). Others relate to ASW Project No. 1232, a subdivision, in August 2000 about four months after this suit was instituted. It is found that the plaintiff had other projects concerning property in the Town of East Lyme. The plaintiff has not sustained their burden of proving that any of these bills relate to the property in question during any period during which the plaintiff claims the defendant was in breach of the alleged agreement. To the extent that some can even be related to the property, they instead represent expenses of the plaintiff in an effort to find something to do with the property during the period the Original Option Agreement was in effect. The golf course development was denied by the town's refusal to change the zoning and no other applications were pursued by the plaintiff with the town prior to March 31, 2000.
There is no written agreement to award attorney's fees to the prevailing party or to any party although the plaintiff claims them in the complaint. The plaintiff has offered no evidence of a statutory or contractual basis for its claim which must be and is hereby denied.
Claims of the parties with respect to evidence not found as facts herein were omitted as not having been proven by a preponderance of the evidence whether contradicted or not.
From the above findings the court concludes that the plaintiff has failed to meet its burden of proof with respect to any of the four counts of the complaint and therefore finds the issues for the defendant. Judgement may enter for the defendant on all counts.
Leuba, J. CT Page 2837